IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ESMERALDA VÉLEZ-AROCHO,

Plaintiff

v.                                                      CIVIL 04-1093 (JAF)

COLEGIO JARDÍN, et al.,

Defendants

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

There are several motions pending before the court in this pregnancy discrimination and retaliation action.  On January 3, 2005, co-defendant Quality Educational Services, Inc. (hereinafter "Quality") filed a motion for summary judgment requesting dismissal of plaintiff Esmeralda Vélez Arocho's (hereinafter "Vélez") complaint.  (Docket No. 48.)  Subsequently, on February 2, 2005, Quality filed a "Motion to Dismiss Second Amended Complaint" pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  (Docket No. 68.)  In this second motion, Quality argues in general that plaintiff's Title VII[1] claims must be dismissed given Vélez' failure to exhaust administrative remedies.  Vélez filed an opposition to said motion on February 15, 2005.  (Docket No. 80.)

Also before the court is the motion for summary judgment filed by co-defendant the United States Department of Education (hereinafter the "United

---

[1]Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  Any reference to the Pregnancy Discrimination Act is made specifically to 42 U.S.C. § 2000e-(k).

CIVIL 04-1093 (JAF)                    2

States") on February 8, 2005.  (Docket No. 71.)  The United States seeks dismissal of the claims asserted by plaintiff against it on sovereign immunity grounds and on the grounds that Vélez was not a federal employee.  Vélez filed her opposition to the United States' motion for summary judgment on February 15, 2005.  (Docket No. 79.)  The court is also considering Quality's supplemental motion for summary judgment which was filed on February 8, 2005.  (Docket No. 72.)  No opposition to Quality's supplemental motion appears in the record.  Finally, co-defendants Colegio Jardín, Nivea Rosario (hereinafter "Rosario") and Víctor González (collectively "Colegio Jardín") filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  (Docket No. 83.) These co-defendants join in the arguments advanced by Quality in its motion to dismiss and additionally maintain that the court does not have jurisdiction because Colegio Jardín does not qualify as an employer under Title VII.  Veléz' opposition to this motion was filed on February 17, 2005 and appears in the record at Docket No. 85.

These matters were all referred to me for a report and recommendation on April 12, 2005.  (Docket No. 114.)  After considering the arguments of the parties and the evidence of record, it is my recommendation that Quality's motion to dismiss (Docket No. 68) be GRANTED.  Quality's motion for summary judgment (Docket No. 48) would thus be rendered moot.  Furthermore, Quality's supplemental motion for summary judgment (Docket No. 72) would be moot in part and should be GRANTED in part.  The motion for summary judgment filed by the

CIVIL 04-1093 (JAF)                    3

United States and the Motion to Dismiss filed by Colegio Jardín, (Docket Nos. 71 and 83) should both be GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff originally brought the present action in the Commonwealth of Puerto Rico Court of First Instance, Bayamón Part against co-defendants Colegio Jardín, Quality, Braxton School of Puerto Rico,[2] Sonia Santiago and the United States. Said complaint alleges in pertinent part that Vélez, a resident of Bayamón, commenced work at Colegio Jardín as a third grade teacher pursuant to an agreement entered into by the parties. Co-defendant Colegio Jardín is, according to the complaint, an entity, a corporation and/or a partnership owned and operated by co-defendants Rosario and Víctor González. Rosario was Colegio Jardín's principal.

By the end of April of 2001, Vélez notified Rosario that she was pregnant and needed to have certain tests performed. Rosario allegedly replied that Vélez needed to make her medical appointments on Saturdays or alternatively to change physicians. Rosario would also inquire as to who would take care of the yet unborn baby during working hours. Vélez claims in her complaint that these action were discriminatory, tortuous and negligent. In addition, the complaint alleges that by the end of the school year, in May of 2001, Rosario informed Vélez that she would be working either as fourth grade teacher or teaching fifth and sixth grade science and math courses. Nevertheless, the complaint alleges that on June 29, 2001,

---

[2]Braxton School of Puerto Rico is no longer a defendant in this case pursuant to the partial judgment entered by the court on March 7, 2004. (Docket No. 104.)

CIVIL 04-1093 (JAF)                    4

Rosario fired Vélez, an action alleged in the complaint to be discriminatory, tortuous, negligent and in breach of contract.  Vélez filed a discrimination charge with the Anti-discrimination Unit of the Puerto Rico Department of Labor and Human Resources (hereinafter "ADU").   The ADU found probable cause of discrimination against Colegio Jardín and its owners.

     In August of 2001, Rosario offered Vélez a part-time position as assistant at the school's library.  In November of 2001, when Vélez was eight months pregnant, Rosario offered Vélez a position as Title I[3] teacher working at the school through Quality.  Quality interviewed Vélez for said position at which interview she reported her already visible pregnancy.  Vélez entered into a service and/or employment contract with Quality.  Under this agreement, Vélez would work as a teacher at Colegio Jardín still under the supervision of Rosario.

     In December of 2001, Vélez reported that the delivery of her baby had been advanced by medical orders to December 7, 2001.  Vélez argues that neither Colegio Jardín nor Quality paid her maternity leave in violation of Puerto Rico law.  When Vélez returned to work in January of 2002, Rosario allegedly told her that she had found out about the charge filed with the ADU and that if she had known that beforehand, she would not have recommended her to Quality for the Title I position.

_____

     [3]Title I is an educational program that receives federal funds and which is managed by the United States Department of Education.  Quality was the entity to which the Puerto Rico Department of Education awarded the Title I service contract to provide supplemental educational services to eligible students enrolled in private schools.  (Docket No. 48, Ex. 1.)

CIVIL 04-1093 (JAF)                    5

Vélez claims that such action was retaliatory and that Quality did not take any steps to impede or avoid this and other discriminatory actions taken against her.

By the end of January 2002, Quality ceased operations and Braxton School of Puerto Rico became her employer. Vélez entered into a new agreement with Braxton School. Vélez claimed in the complaint that Braxton School of Puerto Rico is liable for the actions and/or omissions of Quality. During the month of February of 2002 and after receiving a call from the ADU, Rosario allegedly once again pressured and questioned Vélez about the complaint she had filed. Rosario apparently engaged in a pattern of retaliation against Vélez. As a consequence, Vélez alleges that she suffered back and chest pain and had to report to the State Insurance Fund (hereinafter 'SIF'). The SIF ordered treatment and rest for Vélez. Nevertheless, Sonia Santiago, Braxton's supervisory assistant, called Vélez to ask when she would return to work. In March of 2002, Vélez resigned from her position allegedly because of the incidents with Rosario. Vélez tendered a handwritten resignation letter to Sonia Santiago. However, Santiago allegedly did not accept the resignation and told Vélez that she had to change it. A representative of Braxton wrote a new computer typed letter and made modifications to Vélez' original letter per instructions given by Santiago. Vélez was asked to sign the new letter. Vélez alleges in the complaint that said action constitutes a constructive dismissal. In all, Vélez alleges to have been discriminated against by reason of her gender and pregnancy by all the defendants and retaliated against because of her engaging in protected

CIVIL 04-1093 (JAF)                        6

conduct (the ADU discrimination charge) in violation of Puerto Rico discrimination and labor laws, namely Act No. 100 of June 30, 1959, 29 P.R. Laws Ann. § 146 et seq.; Act No. 69 of July 6, 1985, 29 P.R. Laws Ann. § 1321 et seq.; Act No. 45 of April 18, 1935, 11 P.R. Laws Ann. § 1 et seq.; Act No. 80 of May 30, 1976, 29 P.R. Laws Ann. § 185a et seq. She seeks to recover damages in excess of $400,000.

Plaintiff's complaint was originally filed on June 12, 2001. Vélez amended her complaint on December 4, 2003 to include the United States Department of Education as a defendant. On February 9, 2004, the United States removed the case to this court pursuant to 28 U.S.C. § 1441. (Docket No. 1.) After several procedural developments, including the dismissal of some of Vélez' tort claims against the United States for failure to exhaust Federal Tort Claims Act administrative remedies (Opinion and Order of September 1, 2004, Docket No. 37), Vélez sought leave to amend her complaint to further allege federal question jurisdiction under Title VII and supplemental jurisdiction.[4]  (Docket No. 51.)  In its opinion and order of January 12, 2005, the court granted Vélez' motion seeking leave to amend her complaint to include Title VII claims against the defendants. (Docket No. 56.)  In the same opinion and order the court granted co-defendant Quality an opportunity

---

[4]Vélez has moved for voluntary dismissal without prejudice as to the state law causes of action asserted in her amended complaint against Quality and Colegio Jardín with the exception of the cause of action under Act No. 3 of March 13, 1942, 29 P.R. Laws Ann. § 467, et seq. (Docket No. 87.) There has been no ruling by the court regarding said motion.

CIVIL 04-1093 (JAF)                    7

to supplement its motion for summary judgment filed on January 3, 2005. (Docket No. 48.) The amended complaint was filed on January 19, 2005. (Docket No. 60.)

Since, as stated above, there are several different motions pending before the court, I will analyze them separately. First, I analyze the different motions submitted by co-defendant Quality. (Docket Nos. 48, 68 and 72.) Next I will discuss the motion for summary judgment filed by the United States. (Docket No. 71.) Finally, I will address Colegio Jardín's motion to dismiss for lack of subject matter jurisdiction. (Docket No. 83.) Before doing so, however, I will outline the standards of review for the different motions that are being considered.

## II. STANDARDS OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).

CIVIL 04-1093 (JAF)                    8

The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant.  López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)).  A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor.  See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002).  A fact is considered material if it has the potential to affect the outcome of the case under applicable law.  Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

B.  Motion to Dismiss:  Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a case if the court lacks jurisdiction over the subject matter.  Fed. R. Civ. P. 12(b)(1). "Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998).  To the contrary, what the court must presume is that federal jurisdiction is lacking until

CIVIL 04-1093 (JAF)                      9

otherwise established.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,

377 (1994).    The burden is on the party asserting federal jurisdiction to

demonstrate that such jurisdiction exists.  Aversa v. United States, 99 F.3d 1200,

1209 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir.

1995)).  The complaint must be construed liberally, treating the well-pleaded facts

as true and indulging all reasonable inferences in favor of the plaintiff.  Viqueira v.

First Bank, 140 F.3d at 16 (citing Royal v. Leading Edge Prods., Inc., 833 F.2d 1, 1

(1st Cir. 1987)).

        C.   Motion to Dismiss:  Failure to State a Claim

        Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a litigant to move

for dismissal of an action for "failure to state a claim upon which relief can be

granted...."  Fed. R. Civ. P. 12(b)(6).  Dismissal under the rule is not appropriate

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46

(1957) (footnote omitted).  In ruling upon Rule 12(b)(6) motion, the court must

accept as true all the well-pleaded factual allegations in the complaint and construe

all reasonable inferences in favor of the plaintiff.  Perry v. New England Bus. Serv.,

Inc., 347 F.3d 343, 344 (1st Cir. 2003) (citing Beddall v. State St. Bank & Trust Co.,

137 F.3d 12, 16 (1st Cir. 1998)).  The complaint should only be dismissed if it

appears that, under the facts alleged, the plaintiff cannot recover under any viable

theory.  Campagna v. Mass. Dep't of Envtl. Prot., 334 F.3d 150, 154 (1st Cir. 2003)

CIVIL 04-1093 (JAF)                    10

(citing <u>Nethersole v. Bulger</u>, 287 F.3d 15, 18 (1st Cir. 2002)).  Accordingly, to survive a 12(b)(6) motion, plaintiff must present "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." <u>Romero-Barceló v. Hernández-Agosto</u>, 75 F.3d 23, 28 n.2 (1st Cir. 1996) (quoting <u>Gooley v. Mobile Oil Corp.</u>, 851 F.2d 513, 515 (1st Cir. 1988)).  Even though all inferences must be construed in favor of the plaintiff, the court need not give weight to "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation...." <u>Berner v. Delahanty</u>, 129 F.3d 20, 25 (1st Cir. 1997) (quoting <u>Correa-Martínez v. Arrillaga-Beléndez</u>, 903 F.2d 49, 52 (1st Cir. 1990)).

## III.  APPLICABLE LAW AND ANALYSIS

### A.  <u>Quality's Motions to Dismiss and for Summary Judgment</u>

Prior to Vélez' amendment to the complaint, Quality filed a motion for summary judgment arguing inter alia that there is no independent basis for jurisdiction over the claims against Quality.  Quality specifically argued that Vélez' claims under Puerto Rico Act 100, Act 69, Act 115, Act 45 and Act 80 should be dismissed since Vélez was not its employee but, rather, an independent contractor not protected by these statutes.  Alternatively, Quality contended that dismissal was appropriate because there was "just cause" for Vélez' dismissal inasmuch as there is no factual dispute that Vélez' contract was cancelled due to the closing of Quality's operation.  Such a finding of just cause precluded a determination of discriminatory

CIVIL 04-1093 (JAF)                    11

treatment according to Quality.  Finally, Quality submitted that Vélez' claim under

Act 115 (state law retaliation) failed because she could not show a causal connection

between the protected activity and the adverse employment action complained of.

Subsequently, after Vélez amended her complaint to specifically include a

cause of action for pregnancy discrimination under Title VII, 42 U.S.C. § 2000e-(k),

Quality filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal

Rules of Civil Procedure.  The crux of Quality's contention is that Vélez failed to

exhaust administrative remedies with respect to her newly included Title VII claim

insofar as she neither filed a discrimination charge with the Equal Employment

Opportunity Commission (hereinafter "EEOC") nor obtained a right-to-sue-letter

from said agency. Additionally, Quality maintains that the court lacks supplemental

jurisdiction over the remaining state-law claims.  Quality argues that without the

Title VII claim, the only other ostensible basis for federal jurisdiction is the presence

of the United States as a party in this litigation.  But Vélez has not alleged that the

United States was her employer as to be protected by the Puerto Rico labor statutes

under which she brings her claims.  Finally, Quality makes the argument for the

United States that the latter is protected by sovereign immunity.  Quality requests

dismissal in their entirety of the claims asserted against it.

Because the jurisdictional arguments advanced by Quality in its motion to

dismiss may render the substantive arguments in its motion for summary judgment

moot, I start this discussion with the former.  In her opposition to Quality's motion

CIVIL 04-1093 (JAF)                    12

to dismiss, Vélez claims (1) that the court did not grant Quality leave to file a new dismissal request at this juncture; (2) that the filing of an EEOC charge is not jurisdictional; and (3) that Quality waived the affirmative defense by not pleading the same in its answer to the complaint.  According to Vélez, the exhaustion of administrative remedies is an affirmative defense, like statute of limitations, subject to waiver.  Further, Vélez maintains that she pled a claim under the Pregnancy Discrimination Act in the "Second Amended Complaint" filed on December 4, 2003 (in state court and later removed).  It was Quality's obligation, Vélez submits, to assert the exhaustion of remedies defense when it answered the second amended complaint.

Pursuant to 42 U.S.C. § 2000e-5(e), the filing of a timely charge with the EEOC is a prerequisite for the commencement of suit in federal court. Bonilla v. Muebles J.J. Álvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999).  The charge must be filed "'within one hundred and eighty days after the alleged unlawful employment practice occurred,' or within 300 days if 'the person aggrieved has initially instituted proceedings with [an authorized] State or local agency.'" Id. (quoting 42 U.S.C. § 2000e-5(e)).  This exhaustion of administrative remedies requirement has two key components:  (1) as stated, the timely filing of the EEOC charge; and (2) receipt of a right-to-sue letter from that agency.  Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005).  But as Vélez correctly points out, these requirements are not jurisdictional. Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982).  They are

CIVIL 04-1093 (JAF)                    13

"requirement[s] that, like a statute of limitations, [are] subject to waiver, estoppel, and equitable tolling." Id.; see also Jorge v. Rumsfeld, 404 F.3d at 565. Moreover, a plaintiff wishing to litigate a Title VII claim in federal court must first obtain a right-to-sue letter from the EEOC. A letter from the ADU would not suffice. See 42 U.S.C. § 2000e-5(f)(1)[5]; see also Pérez-Cordero v. Wal-Mart PR, Inc., 235 F. Supp. 2d 95, 103 (D.P.R. 2002); Black v. Brown Univ., 555 F. Supp. 880, 884 n.8 (D.R.I. 1983); Foreman v. Gen. Motors Corp., 473 F. Supp. 166, 177 (E.D. Mich. 1979) (holding that plaintiffs had not exhausted administrative remedies because they obtained a right-to-sue letter from the state agency but not from the EEOC).

In this case, Vélez appears to concede that she did not file a pregnancy discrimination charge with the EEOC and consequently, did not receive a right-to-sue letter from that agency. Therefore, the present controversy turns on the issue of waiver. Vélez' Title VII claim will survive only if the court finds that Quality waived the exhaustion of remedies affirmative defense by not raising it in its answers to Vélez' prior complaints.

A review of the procedural history of this case shows that in her December 4, 2003 amendment to the complaint originally filed in state court and subsequently removed to this court, Vélez only mentions in passing "The Pregnancy

_____

[5]Pursuant to 42 U.S.C. § 2000e-5(f)(1), a person aggrieved under Title VII may bring a civil action within 90 days of the EEOC's notice (right to sue letter). "The plain language of 42 U.S.C. § 2000e-5(f)(1) requires, as a condition precedent to litigating in federal court, a right to sue letter issued by the EEOC." Black v. Brown Univ., 555 F. Supp. at 884 n.8.

CIVIL 04-1093 (JAF)                    14

Discrimination Act."  Particularly, the amended complaint states:  "The dismissals (real or constructive) of Mrs. Vélez were discriminatory, unjustified, arbitrary, unreasonable and illegal in violation of ... ; the Pregnancy Discrimination Act and any other applicable legislation and/or regulation." (Informative Motion, Docket No. 12, Ex. 1 (Second Amended Complaint), at 7, ¶ 39.)[6]  Similarly, paragraph 40 of the Second Amended Complaint (Ex. 1) states:  "The dismissals and actions by defendants, their agents, employees, representatives and/or contractors make up illegal actions, in addition of discrimination due to pregnancy and gender, in violation of ... ; the Pregnancy Discrimination Act and any other applicable legislation and/or regulation." (Id. ¶ 40.)  In its opinion and order of September 1, 2004, the court granted in part and denied in part a motion to dismiss filed by the United States.  (Docket No. 37.)  The court specifically found that Vélez had failed to exhaust administrative remedies which are a prerequisite for maintaining a suit under the Federal Tort Claims Act.  (Id. at 6.)  The court further stated the following:  "Plaintiff has not alleged Title VII violations.   Despite Plaintiff's declaration that her case includes causes of action under 'federal and local pregnancy anti-discrimination statutes,' the complaint's allegations are limited to gender-based discrimination under Puerto Rico's Civil Code." (Id. at 7.)   On

_____

[6]The omissions indicated in the above quotation refer to a number of Puerto Rico statutes identified by Vélez with their complete citations including the number of the Act, the date of enactment and the specific citation to Puerto Rico Laws Annotated.  The reference to the Pregnancy Discrimination Act appears by itself with no citation or reference to Title VII.

CIVIL 04-1093 (JAF)                    15

January 12, 2005, the court issued yet another opinion and order. (Docket No. 56.) This time the court ruled on Vélez' motion (Docket No. 51) seeking to amend the complaint "in order to allege in further detail the existence of federal question (Pregnancy Discrimination Act) and supplemental jurisdiction." Vélez maintained in her motion that her vague reference to the Pregnancy Discrimination Act in the previous complaints, constituted a properly alleged claim under Title VII. (Docket No. 56, at 2.) The court held that "federal courts have found the term 'Pregnancy Discrimination Act' to refer to Title VII" and granted plaintiff's motion for leave to amend the complaint. (Id. at 2-3.)

On January 19, 2005, Vélez filed her amended complaint. (Docket No. 60.) In it, Vélez included a jurisdictional averment with a specific citation to Title VII, a statement indicating that defendants had not raised an affirmative defense with respect to her failure to file an EEOC charge and the citation to Title VII in paragraphs 39 and 40. (Docket No. 60, at 1-2 and 7, ¶¶ 39 and 40.) No other substantial change to the original complaints is apparent. Given these developments, I find that Quality did not waive its exhaustion of administrative remedies affirmative defense as Vélez would have this court hold.[7] I explain.

_____

[7]I find no merit in Vélez' assertion that the motion to dismiss should be denied simply because the court did not grant Quality leave to file new dismissal requests at this juncture. By filing the amended the complaint, the plaintiff effectively triggered a new obligation for all defendants to answer the same. No leave from the court was required specially since the affirmative defense could be raised in a pre-answer motion to dismiss for failure to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6); Wright & Miller, Federal Practice and Procedure: Civil 2d § 1349 (West, 1990).

CIVIL 04-1093 (JAF)                    16

First, Vélez' argument implies that Quality had an obligation to anticipate that the case would be removed to federal court in order to assert an affirmative defense during the state court litigation that is only applicable to federal litigation.  In other words, Vélez appears to suggest that the defendants needed to raise the failure to exhaust administrative remedies defense while the case was still in the Puerto Rico court system even though exhaustion of administrative remedies is only a requirement to commencement of suit in federal court.  Such a position is untenable. Second, this case was removed to this court by the United States when Vélez amended her complaint in state court to include the former as a party.  The basis for this court's jurisdiction appears to be either that the United States was a party or the FTCA.  Nowhere in the notice of removal is there a mention of Title VII as a basis for federal jurisdiction.  (See Notice of Removal, Docket No. 1.)  Third, as I stated before, Vélez only mentioned the Pregnancy Discrimination Act in passing in its second amended complaint, with no citation or reference to Title VII.  Even the court in its opinion and order of September 1, 2004 (Docket No. 37) observed that Vélez had not alleged a Title VII violation and that her allegations were limited to gender-based discrimination under Puerto Rico law.  The defendants, including Quality, were entitled to rely on such statement that no Title VII claim had been alleged. Tellingly, the motion for summary judgment filed by Quality on January 3, 2005 (Docket No. 48) does not include any arguments, jurisdictional, procedural or substantive, regarding Title VII.  Finally, I agree that the obligation to raise the

CIVIL 04-1093 (JAF)                    17

exhaustion of remedies defense arose with Vélez' filing of the amended complaint to

expressly (not vaguely or generally) include Title VII claims.  It is at that point that

the defendants acquired the requisite notice that they needed to defend against a

Title VII cause of action.  See Fed. R. Civ. P. 8.  Further, it has been held that a

defendant who fails to raise exhaustion of administrative remedies in response to

a previous complaint does not waive the affirmative defense so long as the defense

is timely raised in response to a subsequently amended complaint.  Legal Aid Soc'y

v. City of New York, 114 F. Supp. 2d 204, 222 (S.D.N.Y. 2000); see also Massey v.

Helman, 196 F.3d 727, 735 (7th Cir. 1999).  In Massey v. Helman, the Seventh

Circuit noted:

> Because failure to exhaust administrative remedies is an
> affirmative defense, defendants have the burden of pleading
> and proving the defense.  However, when a plaintiff files an
> amended complaint, the new complaint supersedes all
> previous complaints and controls the case from that point
> forward.  Because a plaintiff's new complaint wipes away
> prior pleadings, the amended complaint opens the door for
> defendants to raise new and previously unmentioned
> affirmative defenses.

Massey v. Helman, 196 F.3d at 735 (citations omitted).  Therefore, following the

above rationale, Quality's failure to exhaust administrative remedies defense has not

been waived.  It follows that Vélez' Title VII claims must be dismissed since she did

not file a discrimination charge with the EEOC and consequently did not receive a

right-to-sue letter from that agency.  As to this issue, Quality's motion to dismiss

should be GRANTED.  Given my finding here and my finding regarding the United

CIVIL 04-1093 (JAF)                    18

States' motion for summary judgment in subsection B below, I recommend that the state law claims asserted in the complaint be dismissed without prejudice.  The reasoning for this recommendation will be further explained in subsection D of this report.  The substantive non-jurisdictional arguments advanced by Quality in its motion for summary judgment (Docket No. 48) and in its supplement to said motion (Docket No. 72)[8] should be rendered MOOT.

   B.  United States' Motion for Summary Judgment

      Next is the motion for summary judgment filed by the United States.  The United States argues that Vélez has never been an employee of the federal government.  Therefore, according to the United States, she cannot assert discrimination claims against it under Title VII or any other discrimination statute by which the United States expressly waived sovereign immunity.  Similar principles of sovereign immunity preclude Vélez from maintaining state-law claims against the United States.

      Vélez responded to the United States' motion simply by stating that the motion was untimely and that leave from the court was not obtained.  (Docket No. 79.)  When the United States further supplemented its motion (Docket No. 113) to argue

---

      [8]To the extent Quality's supplemental motion for summary judgment (Docket No. 72) included an argument on the failure to exhaust administrative remedies issue, my discussion addressing the motion to dismiss controls since there is no factual dispute and the issue was resolved against Vélez as a matter of law.  Consequently, as to the administrative exhaustion issue, my recommendation would be that Quality's motion for summary judgment be GRANTED.  In any other respect, the motion would be rendered moot since I am recommending dismissal of the Title VII claim and dismissal of the supplemental state law causes of action.

CIVIL 04-1093 (JAF)                    19

that receipt of federal funds[9] is insufficient by itself to create federal jurisdiction, Vélez replied by citing a criminal case decided by the Eleventh Circuit in 1985. Vélez' refusal to appropriately respond to the United States' substantive arguments evinces that her claims against the United States cannot be maintained.

It is firmly established that an individual may not sue the United States without its consent. United States v. Mitchell, 463 U.S. 206, 212 (1983). With the amendment to the Civil Rights Act of 1964, Congress specifically allowed discrimination suits by employees of the federal government and its agencies, thereby waiving sovereign immunity. 42 U.S.C. § 2000e-16(a); Misra v. Smithsonian Astrophysical Observatory, 248 F.3d 37, 39 (1st Cir. 2001). Title VII constitutes the exclusive remedy for discrimination in the federal government. See Brown v. Gen. Servs. Admin., 425 U.S. 820, 835 (1976).

To the extent that Vélez' amended complaint asserts a Title VII claim against the United States, the same fails because it is undisputed that Vélez was not an employee of the Department of Education. See Spirides v. Reindhardt, 613 F.2d 826, 829-30 (D.C. Cir. 1979) (holding that Title VII, specifically 42 U.S.C. § 2000e-16, covers only those individuals with a direct employment relationship with a government employer); see also Mason v. African Dev. Found., 355 F. Supp. 2d 85, 90 (D.D.C. 2004). And since Title VII is the exclusive remedy for discrimination

---

[9]Vélez apparently alleges that the United States is a proper defendant in this case because her position at Colegio Jardín was federally funded. (Amended Complaint, Docket No. 60, at 3, ¶ 14.)

CIVIL 04-1093 (JAF)                    20

claims against the federal government, it follows that sovereign immunity precludes the assertion of any other claim against the United States including Vélez' state-law claims.  See Rivera v. Heyman, 157 F.3d 101, 105 (2nd Cir. 1998).  I also find that Vélez' general contention that the receipt of federal funds somehow creates federal jurisdiction for claims against the United States is not supported by any authority. In view of the foregoing, I recommend that the United States' motion for summary judgment be GRANTED and that the claims asserted in the amended complaint against it be dismissed in their entirety.

C.  Colegio Jardín's Motion to Dismiss

Co-defendant Colegio Jardín moves to dismiss Vélez' amended complaint against them.   They join Quality's argument that plaintiff failed to exhaust administrative remedies.  Alternatively, these co-defendants submit that the court lacks subject matter jurisdiction because Colegio Jardín is not an employer as defined by Title VII.  Specifically, the co-defendants argue that Colegio Jardín did not have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year" as required by Title VII. 42 U.S.C. § 2000e-(b).  To support this contention, Colegio Jardín submits the unsworn statement under the penalty of perjury of co-defendant Rosario in which she declares that she has been Colegio Jardín's director and president for the last seven years and that the school has never employed more than 14 employees. (Docket No. 83, Ex. 1.)

CIVIL 04-1093 (JAF)                    21

Vélez ripostes that Colegio Jardín did not obtain leave from the court to file the present motion to dismiss; that like Quality, these co-defendants waived the affirmative defense regarding the failure to exhaust administrative remedies; and that the evidence shows 17 employees in attendance at a seminar sponsored by the school. Accordingly, the plaintiff claims that all of the above are grounds for denial of Colegio Jardín's motion to dismiss.

My discussion of Quality's motion to dismiss is dispositive of the present motion. The co-defendants joined Quality's motion to dismiss arguing that Vélez has failed to exhaust Title VII administrative remedies by not filing a discrimination charge with the EEOC. Vélez argues here, as she did in response to Quality's motion, that these co-defendants waived said affirmative defense. They did not. Therefore, Vélez' pregnancy discrimination claims must be dismissed against Colegio Jardín, Nivea Rosario and Víctor González for the reasons stated by me in Section III Subsection A of this Report and Recommendation. Alternatively, Vélez' Title VII claim must be dismissed because Colegio Jardín is not an employer as defined by Title VII.

Title VII defines the term employer in relevant part as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). Colegio Jardín has submitted the unsworn statement under the penalty of perjury of the school's director and president in which she

CIVIL 04-1093 (JAF)                              22

declares that for the last seven years, the school has never employed more than 14

employees.  (Nivea Rosario's Statement, Docket No. 83, Ex. 1.)[10]  Vélez asserts that

Colegio Jardín's number does not add up and submits that 17 employees were

announced in attendance to a certain seminar.  She provides a list of the names of

these 17 individuals.  But she provides nothing in the form of an affidavit or other

suitable evidence to support the contention even though she has the burden to show

jurisdiction now that the same has been challenged.  Viqueira v. First Bank, 140

F.3d at 16; Aversa v. United States, 99 F.3d at 1209.  Therefore, Vélez' Title VII

claim against the co-defendants fails alternatively because she has not met her

burden of showing that Colegio Jardín was an employer under Title VII.  As to this

issue, co-defendants' motion to dismiss (Docket No. 83) should also be GRANTED.

      D.  State-Law Claims: Supplemental Jurisdiction

      On February 28, 2005, Vélez moved for voluntary dismissal of the claims

asserted against Quality, Colegio Jardín, Nivea Rosario and Víctor González with the

exception of the Pregnancy Discrimination Act (Title VII) and Puerto Rico Act No.

3 of March 13, 1942, 29 P.R. Laws Ann. § 467 et seq., also known as the Working

Mother Act.  (Docket No. 87.)  Vélez also moved for voluntary dismissal of all claims

against co-defendant Braxton School.  (Id.)  On March 4, 2005, the court granted

_____

      [10]It is appropriate for the court to consider affidavits and other evidence when
the issue before the court presents a jurisdictional question.  See Hernández-
Santiago v. Ecolab, Inc., 397 F.3d 30, 33 (1st Cir. 2005); see also González v. United
States, 284 F.3d 281, 288 (1st Cir. 2002) (holding that the court may consider
materials outside of the pleadings, including affidavits in analyzing a Rule 12(b)(1)
motion.).

CIVIL 04-1093 (JAF)                    23

Vélez' motion for voluntary dismissal but only as to Braxton School.  (Docket No. 103.)  Partial judgment was entered on March 7, 2005, dismissing without prejudice the causes of action against Braxton School.  (Docket No. 104.)  The court did not rule on the motion for voluntary dismissal as to the remaining co-defendants. Therefore, all the state law claims asserted in Vélez' amended complaint are still before the court.

Having concluded that Vélez' Title VII claim must be dismissed against Quality, the United States and Colegio Jardín, it appears that the only claim under which federal jurisdiction was grounded no longer exists.  In addition, it has also been recommended that the claims against the United States be dismissed, inter alia, on sovereign immunity grounds.  Thus, to the extent federal jurisdiction was anchored on the fact that the United States was a party, such condition has also been eliminated.  It is therefore my recommendation that the state law claims asserted against above co-defendants be dismissed without prejudice.  See González-De-Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004)  ("Under 28 U.S.C. § 1367, '[a] district court may decline to exercise supplemental jurisdiction' if 'the district court has dismissed all claims under which it has original jurisdiction.'"); see also Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 104-05 (1st Cir. 2004), cert. denied, 125 S. Ct. 1064 (2005); Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).

CIVIL 04-1093 (JAF)                          24

IV.  CONCLUSION

In view of the above, it is my recommendation that Quality's motion to dismiss (Docket No. 68) be GRANTED.  Quality's motion for summary judgment and supplemental motion for summary judgment (Docket Nos. 48, 72) would be moot with the exception of the exhaustion of administrative remedies argument in the supplemental motion.  As to said issue, the supplemental motion (Docket No. 72) should be GRANTED.  I also recommend that the United States' motion for summary judgment (Docket No. 71) and the motion to dismiss for lack of subject matter jurisdiction filed by co-defendants Colegio Jardín, Nivea Rosario and Víctor González (Docket No. 83) be GRANTED in their entirety.  Finally, the court should abstain from asserting supplemental jurisdiction over all state-law claims and dismiss the same without prejudice.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6

CIVIL 04-1093 (JAF)                          25

(1st Cir. 1987); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 24th day of May, 2005.


S/ JUSTO ARENAS
Chief United States Magistrate Judge